UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORELEI CHACON and FAIR HOUSING
JUSTICE CENTER, INC.,

                Plaintiffs,

      v.

LEFRAK ORGANIZATION, INC. and ESTATES
NY REAL ESTATE SERVICES LLC. d/b/a Kings
& Queens Leasing and LeFrak City Leasing,

                Defendants.

No. 13 Civ. 2759 (DLC)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

EMERY CELLI BRINCKERHOFF & ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, NY  10019
(212) 763-5000

HOUSING WORKS, INC
320 W. 13th Street
New York, NY  10014
(212) 645-8111, ext. 4167

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

<u>PAGE NO(s)</u>:

TABLE OF AUTHORITIES ................................................................................ iii-vii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ............................................................................................................ 4

I.      MOTION TO DISMISS SHOULD BE DENIED WHEN THE FACTS
ALLEGED ARE FACIALLY PLAUSIBLE AND PROVIDE FAIR NOTICE
OF THE BASIS FOR THE STATED CLAIMS ...................................................... 4

II.     PLAINTIFFS' COMPLAINT ADEQUATELY PLEADS CLAIMS FOR
INTENTIONAL DISCRIMINATION BASED ON DISABILITY UNDER
THE FAIR HOUSING ACT.................................................................................. 6

      A.     Plaintiffs Adequately Allege That Defendants Employ Discriminatory
Conditions of Renting Apartments in Violation of Section 3604(f)(2) ...... 8

      B.     Plaintiffs' Complaint Includes Sufficient Factual Allegations That
Defendants Made Apartments Unavailable to Plaintiffs in Violation of
Section 3604(f)(1).......................................................................................... 9

      C.     Plaintiffs' Complaint Contains Ample Facts Alleging Defendants
Limited the Information They Provided to Plaintiffs about Suitably
Priced Apartments Available for Inspection or Rent in Violation of
Section 3604(d)........................................................................................... 11

III.    PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION FOR
DISABILITY DISCRIMINATION UNDER THE FAIR HOUSING ACT
BASED ON A DISPARATE IMPACT THEORY OF LIABILITY................... 13

IV.    UNDER THE RESTORATION ACT OF 2005, THE CITY HUMAN RIGHTS
LAW EXPRESSLY REQUIRES AN INDEPENDENT ANALYSIS AND
LIBERAL CONSTRUCTION IN ALL CIRCUMSTANCES, EVEN WHERE
STATE AND FEDERAL HUMAN RIGHTS LAWS HAVE COMPARABLE
LANGUAGE ...................................................................................................... 16

V.     DEFENDANTS ERRONEOUSLY URGE THIS COURT TO INTERPRET
THE CITY HUMAN RIGHTS LAW CLAIMS IDENTICALLY WITH
THE FAIR HOUSING ACT CLAIMS................................................................ 18

VI.    PLAINTIFFS HAVE AMPLY STATED CLAIMS FOR INTENTIONAL
SOURCE OF INCOME DISCRIMINATION UNDER THE NEW YORK
CITY HUMAN RIGHTS LAW, ON MULTIPLE GROUNDS.......................... 19

i

A.      Defendants Have Refused to Assist Those with a Government Subsidy ..................................................................................... 20

B.      Defendants Discriminate in the Manner in Which They Meet with Applicants .............................................................................. 23

C.      Defendants Intentionally Discriminate in the Application Process. ......... 23

D.      Defendants Discriminate by Placing Those with a Government Housing Subsidy on a Waiting List .......................................... 25

E.      Defendants Discriminate by Demanding a Letter That They Know HASA Does Not Provide, Preventing All HASA Clients from Securing One of Defendants' Apartments ...................................... 26

      1.      Courts have consistently rejected Defendants' administrative burden defense, particularly under the precise circumstances at bar ................................................................................. 27

      2.      Defendants' assertion that Plaintiffs were not qualified to rent is a tautology ..................................................................... 33

VII.    PLAINTIFFS HAVE AMPLY STATED CLAIMS FOR DISABILITY DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW ................................................................. 33

CONCLUSION ................................................................................................. 34

## TABLE OF AUTHORITIES

**PAGE NO(s)**:

**FEDERAL CASES:**

*Adkins v. Morgan Stanley,*
 12 Civ. 7667, 2013 WL 3835198 (S.D.N.Y. July 25, 2013) ............................................. 5

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) .......................................................................................................... 5

*Barbosa v. Continuum Health Partners, Inc.,*
 716 F. Supp. 2d 210 (S.D.N.Y. 2010)............................................................................... 5

*Bell Atlantic Corp., v. Twombly,*
 550 U.S. 544 (2007)........................................................................................................... 5

*Boykin v. Keycorp,*
 521 F.3d 202 (2d Cir. 2008).............................................................................................. 5

*Cabrera v. Fischler,*
 814 F. Supp. 269 (E.D.N.Y. 1993), *aff'd in pertinent part sub nom, Cabrera v.*
 *Jakabovitz,* 24 F.3d 372 (2d Cir. 1994) ......................................................................... 12

*Cales and Fair Housing Justice Center, Inc. v. New Castle Hill Realty, et al.,*
 10 Civ. 3426, 2011 U.S. Dist. LEXIS 9619 (S.D.N.Y. Jan. 31, 2011)........................... 31

*Chambers v. Time Warner, Inc.,*
 282 F. 3d 147 (2d Cir. 2002)........................................................................................... 22

*Cosmas v. Hassett,*
 886 F.2d 8 (2d Cir. 1989) ............................................................................................... 22

*DiFolco v. MSNBC Cable L.L.C.,*
 622 F.3d 104 (2d Cir. 2010).............................................................................................. 4

*Eastern Paralyzed Veterans Assoc. and Long Island Housing Services v. Lazarus Burman*
 *Assoc.,* 133 F. Supp. 2d 203 (E.D.N.Y. 2001) .................................................................. 8

*Fair Housing Justice Center, Inc. v. Silver Beach Gardens Corp.,*
 10 Civ. 912, 2010 WL 3341907 (S.D.N.Y. Aug. 13, 2012) ............................................. 8

*Feemster v. BSA Ltd. Partnership,*
 548 F.3d 1063 (D.C. Cir. 2008)....................................................................................... 28

*Fonte v. Bd. of Managers of Continental Towers Condominium,*
 848 F.2d 24 (2d Cir. 1988).............................................................................................. 22

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000) ............................................................................. 22

*Haber v. ASN 50th Street LLC*,
   847 F. Supp. 2d 578 (S.D.N.Y. 2012) ............................................................. 19

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .................................................................................. 7, 12

*Henreietta D. v. Guiliani*,
   119 F. Supp. 2d 181 (E.D.N.Y. 2000) ............................................................. 29

*Huertas v. East River Housing Corp.*,
   674 F. Supp. 440 (S.D.N.Y. 1987) ................................................................. 6, 9

*Huntington Branch, N.A.A.C.P. v. Town of Huntington*,
   844 F.2d 926 (2d Cir. 1988) ............................................................... 13, 14, 16

*Jenkins v. New York City Transit Authority*,
   646 F. Supp. 2d 464 (S.D.N.Y. 2009) ............................................................. 13

*Kassman v. KPMG LLP*,
   11 Civ. 3743, 2013 WL 452913 (S.D.N.Y. Feb. 7, 2013) ................................... 5

*Kennedy v. Related Mgmt.*,
   08 Civ. 3969, 2009 U.S. Dist. LEXIS 64732 (S.D.N.Y. July 23, 2009) ........................ 26

*LaFlamme v. New Horizons, Inc.*,
   605 F. Supp. 2d 378 (D. Conn. 2009) ............................................................... 6

*Loeffler v. Staten Island Univ. Hosp.*,
   582 F.3d 268 (2d Cir. 2009) ........................................................................ 17, 18

*McDermott v. N.Y. Metro LLC*,
   664 F. Supp. 2d 294 (S.D.N.Y. 2009) ............................................................... 7

*Mihalik v. Credit Agricole Cheuvreux North America*,
   715 F.3d 102 (2d Cir. 2013) ........................................................................... 18

*Nowosad v. English*,
   903 F. Supp. 377 (E.D.N.Y. 1995) .................................................................... 5

*Passanante v. R.Y. Mgmt. Co., Inc.*,
   99 Civ. 9760, 2001 U.S. Dist. LEXIS 1205 (S.D.N.Y. Feb. 13, 2001) ...................... 19

*Ragin v. Harry Macklowe Real Estate Co.*,
   801 F. Supp. 1213 (S.D.N.Y. 1992), *aff'd in pertinent part*,
   6 F.3d 898 (2d Cir. 1993) ............................................................................... 7

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middleton*,
   294 F. 3d 35 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002) ................................. 13

*Sanders v. Grenadier Realty, Inc.*,
   08 Civ. 3920, 2009 U.S. Dist. LEXIS 38356 (S.D.N.Y. May 6, 2009) ........................... 18

*Short v. Manhattan Apartments*,
   916 F. Supp. 2d 375 (S.D.N.Y. 2012) ............................................................. 30

*Swierkiewicz v. Sorema N.S.*,
   534 U.S. 506 (2002) ................................................................................. 5

*Tsombanidis v. West Haven Fire Department*,
   352 F. 3d 565 (2d Cir. 2003) .................................................................... 13

*United States v. Yonkers Bd. of Educ.*,
   624 F. Supp. 1276 (S.D.N.Y. 1985), *aff'd*, 837 F.2d 1181 (2nd Cir. 1987) ................... 10

## STATE CASES:

*Albunio v. City of New York*,
   16 N.Y.3d 472 (2011) ............................................................................. 17

*Bumpus v. New York City Transit Auth.*,
   18 Misc. 3d 1131A, 859 N.Y.S.2d 893 (Sup. Ct., Kings County 2008), *aff'd*,
   66 A.D.3d 26, 883 N.Y.S.2d 99 (2d Dep't 2009) ............................................... 17

*Evans v. Newman*,
   71 A.D.2d 240, 423 N.Y.S.2d 59 (3d Dep't 1979), *aff'd*,
   49 N.Y.2d 904, 428 N.Y.S.2d 226 (1980) ...................................................... 28

*Friedman-Kien v. City of New York*,
   92 A.D.2d 827, 460 N.Y.S.2d 547 (1st Dep't 1983), *aff'd*,
   49 N.Y.2d 639, 419 N.Y.S.2d 931 (1979) ...................................................... 28

*Industrial Commr. v. Five Corners Tavern*,
   47 N.Y.2d 639, 419 N.Y.S.2d 931 (1979) ...................................................... 28

*Jordan v. Bates Advertising Holdings, Inc.*,
   11 Misc. 3d 764, 816 N.Y.S.2d 310 (Sup. Ct., N.Y. County 2006) ............................. 17

*Nelson v. HSBC Bank USA*,
   87 A.D.3d 995, 929 N.Y.S.2d 259 (2d Dep't 2011) ......................................... 17, 18

*State v. Cities Service Co.*,
   180 A.D.2d 940, 580 N.Y.S.2d 512 (3d Dep't 1992) ........................................... 28

*Tapia v. Successful Mgmt. Corp.*,
    400563/08, 2009 N.Y. Misc. LEXIS 1909 (Sup. Ct., N.Y. County July 20, 2009), *aff'd*,
    79 A.D.3d 422, 915 N.Y.S.2d 19 (1st Dep't 2010) ............................................ 29, 31, 32

*Timkovsky v. 56 Bennett LLC*,
    24 Misc. 3d 997 (Sup. Ct., N.Y. County 2009) ............................................................. 32

*Vig v. New York Hairspray Co.*,
    885 N.Y.S.2d 74 (1st Dep't 2009) ................................................................................. 18

*Williams v. New York City Housing Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ......................................................... 17

**STATUTES:**

42 U.S.C. § 3602(i) .................................................................................................................. 7

42 U.S.C. § 3604(d) ............................................................................................................... 11

42 U.S.C. § 3604(f)(1) ........................................................................................................ 9, 11

42 U.S.C. § 3604(f)(2) ............................................................................................................. 8

42 U.S.C. § 3613(a)(1)(A) ....................................................................................................... 7


**NEW YORK CITY LAW**:

Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, at § 1 (2005) ......... 16, 18

N.Y. City Admin. Code § 8-102(25) ...................................................................................... 31

N.Y. City Admin. Code § 8-107(5) ........................................................................................ 31

N.Y. City Admin. Code § 8-107(5)(a)(1) ................................................................. 21, 24, 25, 33

N.Y. City Admin. Code § 8-107(5)(a)(2) ................................................................. 21, 23, 24, 33

N.Y. City Admin. Code § 8-107(5)(c)(1) ................................................................................ 25

N.Y. City Admin. Code § 8-107(o) ........................................................................................ 29

N.Y. City Admin. Code § 8-130 ............................................................................................. 16

N.Y. City Admin. Code § 21-128(c)(3) .................................................................................. 29

**REGULATIONS:**

24 C.F.R. § 100.80(a).................................................................................................... 11

24 C.F.R. § 100.80(b)(4)............................................................................................... 12

**OTHER AUTHORITIES:**

53 Fed. Reg. 44995(Nov. 7, 1998)................................................................................ 10

114 Cong. Rec. 5515(1968).......................................................................................... 10

Plaintiffs Lorelei Chacon and Fair Housing Justice Center ("FHJC") (collectively

"Plaintiffs") submit this brief in opposition to the motion to dismiss by Defendants LeFrak

Organization, Inc. and Estates NY Real Estate Services LLC (collectively "Defendants').

## PRELIMINARY STATEMENT

This case involves includes textbook disability and source of income discrimination, from

segregated systems of brokerage to blatantly disparate treatment of disabled clients of the New

York City HIV/AIDS Services Administration ("HASA").  Because these claims cannot be

dismissed under the governing standards, Defendants seek to treat this as a motion for summary

judgment, urging burdens of proof that correspond to such motions, and seeking to introduce

documents and alleged facts not contained within the four corners of the Complaint.  In so doing,

Defendants ask this Court to affirm a scheme that discriminates against Plaintiffs, and to provide

Defendants with an exemption that would nullify the source of income law, an exemption that

the City Council specifically rejected in drafting the statute in question.

Lorelei Chacon is a 37-year-old, indigent, disabled woman living with

clinical/symptomatic HIV illness or AIDS.  She is a client of HASA and uses a HASA housing

subsidy to rent her apartment.  In September 2011, Ms. Chacon was searching for an apartment

to rent in New York City at approximately $1,100 per month.  After unsuccessfully attempting to

rent an apartment from Defendants, Ms. Chacon turned to the FHJC – a nonprofit fair housing

organization – for assistance.  The FHJC sent fair housing testers to Defendants' rental offices in

May 2012 and found that Defendants treat prospective disabled renters with a HASA housing

subsidy in a discriminatory manner.

The testers confirmed that Defendants operate a dual and discriminatory rental system.

Both Ms. Chacon and the testers found that at its LeFrak City rental office, Defendants refuse

1

service to prospective tenants who use government housing subsidies, like HASA.  Instead, such individuals are sent to a separate location where they are required to speak to Defendants' agents through a security glass window while standing and are not told about or shown apartments available for rent unless they provide certain documents, pass background checks, and complete a written application form, after which they are placed on a waiting list.  All of this contrasts sharply with Defendants' treatment of employed applicants.

In addition, Defendants require prospective applicants with government housing subsidies to provide written proof of the specific dollar amount of their subsidy at the initial rental inquiry stage and as a condition to being told about or shown apartments available for rent. Defendants do not impose this condition on employed prospective applicants.  The disparate treatment to which Defendants have subjected Plaintiffs plainly violates both federal and city human rights laws.

The Complaint also alleges discrimination based upon disparate impact.  Defendants know that HASA clients, 100% of whom are disabled persons living with AIDS, cannot meet their initial requirement.  Thus, by definition, as a group, they are never able to complete an application for or rent an apartment from Defendants.  Since nearly one-half of all New York City residents living with AIDS are HASA clients and only 16% of Section 8 renters are disabled (with many fewer living with AIDS), Defendants' policies have an adverse and disproportionate impact based on disability.  Even without applying the broad and uniquely liberal construction that the human rights laws require, Plaintiffs' claims are more than adequately pleaded and, respectfully, cannot  be dismissed under the standards that govern this motion.

## STATEMENT OF FACTS

For the sake of brevity, Plaintiffs respectfully refer the Court to the Complaint for a full

recitation of the relevant facts.  Rather than rehearse those facts here, Plaintiffs will succinctly

address the many unfounded assertions and inaccuracies set forth in Defendants' moving brief.

It is settled that on a motion to dismiss, the Court must consider only those facts set forth

within the four corners of the Complaint.  (*See* Argument, *infra*, Section VI.A..)  Unfortunately,

Defendants' Memorandum of Law is replete with factual assertions not contained within the four

corners of the Complaint, and thus not cognizable on this motion to dismiss.  Defendants assert

that Lefrak is a "respected" landlord (D. Mem. at 1); that Defendants "suppl[y] quality rental

housing" (*id.* at 4); that this includes "Recipients of Governmental Housing Subsidies" (*id.*); that

many "people suffering from AIDS or recipients of housing subsidies . . . have chosen to make

LeFrak properties their home for years" (*id.* at 2); and that this includes "at least one" HASA

client.  (*Id.*)  None of these allegations appears in Plaintiffs' Complaint, and their inclusion in

Defendants' brief is inappropriate.

Similarly, Defendants impermissibly opine on what "other landlords reasonably and

lawfully require" (*id.* at 1); attempt to justify the maintenance of segregated rental offices (*id.* at

1, 4-5); assert that Plaintiffs have not "bothered to ascertain why HASA refuses to provide its

clients with any such documentation" (*id.* at 2); describe the manner in which applicants

allegedly make contact with Defendants (*id.* at 5); describe alleged requirements for "non-

subsidized applicants" and for "Employed applicants" (*id.* at 5); and erroneously suggest that

other HASA clients have obtained documentation of their housing subsidies.  (*Id.* at 7; *see infra*

note 9.)  None of these allegations appears in the Complaint, and thus none is cognizable on this

motion.

Finally, Defendants allege that Ms. Chacon "applied only for a one-bedroom apartment."

(*Id.* at 6.)  <u>First</u>, Defendants impermissibly attempt to prove this allegation by resort to an

extrinsic document not relied upon or incorporated into the Complaint.  (*See infra* note 7.)

Second, as Defendants acknowledge, "the Amended Complaint alleges that Ms. Chacon

expressed interest in renting either a studio or a one-bedroom apartment."  (D. Mem. at 6.)  In

fact, the Complaint repeatedly alleges that Plaintiffs sought an apartment for around $1,100 per

month, regardless of whether it was a studio or one-bedroom (Complaint ¶ 32:  "Ms. Chacon told

the woman that she was looking for a studio or one-bedroom apartment . . . ."; *id.* ¶ 33:  "Ms.

Chacon told Ms. Jones that she was interested in renting a studio or one-bedroom apartment in

LeFrak City."; *id.* ¶ 46:  tester called Defendants "to inquire about a studio or one-bedroom

apartment"; *id.* ¶ 49.)  The Complaint clearly shows that the amount rather than the size of the

apartment was the key.  (*See id.* ¶ 27:  "HASA informed Ms. Chacon that if she found a habitable

apartment within the range of approximately $1,100 a month, HASA would provide her with a

full housing subsidy . . . .")  These allegations must be taken as true, and make it clear that Ms.

Chacon and the testers clearly informed Defendants that they were looking for a studio or one-

bedroom apartment, regardless of what may have been noted in a single, extrinsic document that

Defendants hope to proffer later in this case.

## ARGUMENT

## I.    A MOTION TO DISMISS SHOULD BE DENIED WHEN THE FACTS ALLEGED ARE FACIALLY PLAUSIBLE AND PROVIDE FAIR NOTICE OF THE BASIS FOR THE STATED CLAIMS.

In deciding a Rule 12(b)(6) motion, a court must "accept[] all factual allegations as true,

and draw[] all reasonable inferences in the plaintiff's favor."  *DiFolco v. MSNBC Cable L.L.C.*,

622 F.3d 104, 110-11 (2d Cir. 2010) (alteration in original, internal quotation marks omitted).  At

this stage of the proceeding, "it is not the Court's function to weigh the evidence that might be

presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient." *Nowosad v. English,* 903 F. Supp. 377, 381 (E.D.N.Y. 1995) (citations omitted).

In general, a claim will survive a motion to dismiss so long as it is facially plausible and gives fair notice to a defendant of the basis for the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570 (2007); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010); *Adkins v. Morgan Stanley*, 12 Civ. 7667, 2013 WL 3835198, at *8 (S.D.N.Y. July 25, 2013) (motion to dismiss Fair Housing Act disparate impact claim denied). Where factual allegations permit a court to draw a reasonable inference of plausible, not probable, liability, then a claim should not be dismissed. *Iqbal*, 556 U.S. at 678.

Defendants' argument to the contrary, Plaintiffs need not establish a prima facie case of discrimination at the pleadings stage. *Swierkiewicz v. Sorema N.S.*, 534 U.S. 506, 510 (2002). Since the *McDonnell Douglas* burden-shifting framework is an evidentiary standard, not a pleading requirement, Plaintiffs are not required to establish each *McDonnell Douglas* prima facie element in their Complaint. *Boykin v. Keycorp*, 521 F.3d 202, 212 (2d Cir. 2008) (Fair Housing Act disparate treatment claim); *Adkins*, 2013 WL 3835198, at *8 (Fair Housing Act disparate impact claim); *Kassman v. KPMG LLP*, 11 Civ. 3743, 2013 WL 452913, at *4 (S.D.N.Y. Feb. 7, 2013) (motion to dismiss Title VII complaint denied).

Defendants not only mischaracterize the federal pleadings requirement by relying on decisions involving summary judgment motions in support of their motion to dismiss, but ignore the specific factual allegations in the Complaint and prematurely raise questions of fact before filing an answer or commencing discovery. Here, Plaintiffs have alleged facts notifying Defendants of specific conduct and policies that occurred in 2011 and 2012 that give rise to

several claims of disability[1] and source of income discrimination under the Fair Housing Act and the New York City Human Rights Law.

## II.    PLAINTIFFS' COMPLAINT ADEQUATELY PLEADS CLAIMS FOR INTENTIONAL DISCRIMINATION BASED ON DISABILITY UNDER THE FAIR HOUSING ACT.

Plaintiffs allege in their Complaint that Defendants intentionally discriminated against Plaintiffs because of disability in violation of three provisions of the Fair Housing Act. (Complaint ¶¶ 60, 69-70, 75-77, 82-83.)  To adequately plead a claim of intentional discrimination, Plaintiffs need not allege that Defendants were motivated by personal prejudice or discriminatory animus toward people with disabilities, including those living with AIDS. *LaFlamme v. New Horizons, Inc*., 605 F. Supp. 2d 378, 394 (D. Conn. 2009).  When determining whether a discriminatory purpose has been alleged sufficiently, a court should consider the totality of relevant allegations, including direct and circumstantial facts, from which an inference of intent may be made.  *Huertas v. East River Housing Corp.*, 674 F. Supp. 440, 455 (S.D.N.Y. 1987).  Allegations, such as those made here, that "adherence to a particular policy or practice, with full knowledge of the predictable effects of such adherence . . . is one factor among many others which may be considered by a court in determining whether an inference of [discriminatory] intent should be drawn." *Id*.

Defendants have created a rental application process that by its very design discriminates against people living with AIDS like Ms. Chacon.  Plaintiffs' Complaint alleges that Defendants adopted and have continued to apply a policy of requiring a letter from HASA clients setting forth a sum certain in rental assistance at the initial stage of the rental process even after knowing that all HASA clients are persons with disabilities and that HASA does not provide its clients

---

[1] The term "disability" is used throughout this memorandum of law instead of the term "handicap" except where reference is being made to statutory text.

with such a document.  (Complaint ¶¶ 34-54.)  As Plaintiffs allege, such deliberate conduct constitutes intentional discrimination based on disability.  (*Id*. ¶ 60.)  By design, Defendants' agents <u>never</u> tell HASA clients, who represent nearly one-half of all New York City residents living with AIDS, about or show them apartments available for rent and <u>never</u> place them on Defendants' waiting list.  (Id. ¶¶ 34-54).  Defendants knowingly impose a condition requiring documentation at the initial step of the rental process that is impossible for HASA clients to comply with as a means of denying access to Defendants' rental application process and ultimately refusing to rent apartments to disabled people living with AIDS like Ms. Chacon. *Id*.

Defendants erroneously claim that Plaintiffs have not alleged any disparate treatment claims under the Fair Housing Act, and thus, this Court should not even evaluate whether the Complaint is sufficient to survive a motion to dismiss claims based on a disparate treatment theory of liability.  This position utterly ignores the specific words of the Complaint alleging that Defendants' conduct as described in Paragraphs 34 through 54 of the Complaint constitutes "intentional discrimination based on disability."  (*Id*. ¶ 60.)  In fact, Plaintiffs have alleged intentional disability discrimination claims pursuant to three separate provisions of the Fair Housing Act.  (*Id*. ¶¶ 66-72 (First Claim for Relief); ¶¶ 73-79 (Second Claim for Relief); and ¶¶ 80-85 (Third Claim for Relief).)  Defendants' motion to dismiss these claims should be denied.[2]

---

[2] Defendants' make passing reference to *McDermott v. N.Y. Metro LLC*, 664 F. Supp. 2d 294 (S.D.N.Y. 2009), where plaintiff was not an actual renter or fair housing organization as Plaintiffs are here, for the proposition that Plaintiffs lack standing to assert claims against Defendants in this case.  Under the broad standing provisions of the Fair Housing Act, any "aggrieved person" may commence a civil action after the occurrence or termination of a discriminatory housing practice.  42 U.S.C. § 3613(a)(1)(A). "Aggrieved person" is defined as any person, including a corporation, who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."  42 U.S.C. § 3602(i).  The Supreme Court has held that fair housing groups such as Plaintiff FHJC, may have <u>direct organizational standing</u> as "aggrieved persons."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *see also Cabrera v. Fischler*, 814 F. Supp. 269, 277 (E.D.N.Y. 1993), *aff'd in pertinent part sub nom*, *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F. Supp. 1213, 1232-33 (S.D.N.Y. 1992), *aff'd in pertinent part*, 6 F.3d 898, 904-05 (2d Cir. 1993); *Eastern Paralyzed Veterans Assoc. and*

**A.** **Plaintiffs Adequately Allege That Defendants Employ Discriminatory Conditions of Renting Apartments in Violation of Section 3604(f)(2).**

The Fair Housing Act prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of disability. 42 U.S.C. § 3604(f)(2); (*See* Complaint, Plaintiffs' Third Claim for Relief). It is sufficient at the pleadings stage for a plaintiff asserting a Section 3604(f)(2) disparate treatment claim to allege Defendants imposed rental conditions on persons with disabilities that were not imposed on others under circumstances giving rise to a plausible inference of discrimination.

Here, Plaintiffs assert that Defendants' practice of imposing a condition of rental on HASA clients when Defendants know HASA clients cannot meet the condition is intentional disability discrimination against people living with AIDS in violation of Section 3604(f)(2). Plaintiffs support their claim by alleging that Defendants know that HASA clients are disabled individuals living with clinical/symptomatic HIV illness or AIDS, in part because HASA is the "HIV/AIDS Services Administration" which has existed for nearly 30 years in New York City. (Complaint ¶ 17.) Defendants' agents are familiar with the HASA program. (*Id.* ¶¶ 35-36, 51, 53.) Both Ms. Chacon and FHJC testers told Defendants' agents that they or a family member had a HASA housing subsidy. (*Id.* ¶¶ 34-37, 47, 49, 52.) HASA and Housing Works employees also orally notified Defendants' agents that Ms. Chacon was a HASA client. (*Id.* ¶¶ 35-36.)

---

*Long Island Housing Services v. Lazarus Burman Assoc.,* 133 F. Supp. 2d 203 (E.D.N.Y. 2001); *Fair Housing Justice Center, Inc. v. Silver Beach Gardens Corp.*, 10 Civ. 912, 2010 WL 3341907, at *9 (S.D.N.Y. Aug. 13, 2012); *see also* 53 Fed. Reg. 44995 (Nov. 7, 1998) (aggrieved persons "includes a fair housing organization . . . who seeks information about the availability of dwellings to determine whether discriminatory housing practices are occurring."). In *McDermott,* the Court granted defendants' motion to dismiss, finding, among other things, that plaintiff, a rental search service, did not have <u>representational standing</u> on behalf of its clients.

Defendants' agents openly admit that HASA clients cannot provide written documentation from HASA at the initial phases of Defendants' rental inquiry and application process.  (*Id.* ¶¶ 51, 53.)

In contrast, Defendants' agents know that prospective Section 8 applicants, who by definition are low-income and not necessarily disabled or living with AIDS, are able to comply with Defendants' conditions for rental.  While at first glance it appears that Defendants impose the same condition of rental on HASA clients as on Section 8 applicants, Plaintiffs' allegations make clear that Defendants know that the predictable outcome of their rental conditions is that HASA clients <u>never</u> learn about an apartment for rent, <u>never</u> see an apartment, <u>never</u> successfully complete Defendants' application process, and, ultimately, <u>never</u> rent an apartment from Defendants even though they have the financial ability through HASA to pay Defendants' rent. *See Huertas*, 674 F. Supp. at 455-456.  By design, Defendants have tied access to housing to the production of written documentation at the initial phase of the rental process even though Defendants know HASA clients, who are people living with AIDS, cannot produce the documentation at that stage of the process.  Such conduct, as Plaintiffs allege in their Complaint, discriminates intentionally, not inadvertently, on the basis of disability.

> **B.    Plaintiffs' Complaint Includes Sufficient Factual Allegations That Defendants Made Apartments Unavailable to Plaintiffs in Violation of Section 3604(f)(1).**

Section 3604(f)(1) of the Fair Housing Act makes it illegal to "discriminate in the sale or rental, or *otherwise make unavailable or deny*, a dwelling to any buyer or renter" because of disability.  42 U.S.C. § 3604(f)(1) (emphasis added); (*See* Complaint, Plaintiffs' Second Claim for Relief).  The provision "to otherwise make unavailable or deny" is extremely broad and "has been construed to reach every practice which has the effect of making housing more difficult to obtain on prohibited grounds." *United States v. Yonkers Bd. of Educ.*, 624 F. Supp. 1276, 1291 n.

9 (S.D.N.Y. 1985), *aff'd*, 837 F.2d 1181 (2nd Cir. 1987) (citation and internal quotations omitted) (interpreting identical statutory provision in Section 3604(a)).  This provision does not, moreover, include the requirement that Plaintiffs make a "bona fide offer" as is required by the "refusal to sell or rent" provisions of Section 3604(a) of the Fair Housing Act.  *See* 114 Cong. Rec. 5515 (1968).  Where prospective tenants are prevented from making any offer to rent because they are not told about or shown any apartments and are denied access to a waiting list because they cannot produce a piece of paper at the initial phase of the rental process, their ability to make "bona fide offer" has been denied.

Plaintiffs' allege precisely this in their Complaint.  First, Defendants' agents refused to confirm for Ms. Chacon whether there were any apartments available for about $1,100 per month at LeFrak City even though the LeFrak City website indicated there were.  (Complaint  ¶ 32.) Upon calling a different LeFrak office, Ms. Chacon was steered away from LeFrak City and encouraged to consider other LeFrak buildings even when she said she was specifically interested in LeFrak City.  (*Id*. ¶ 33.)  When she went to the LeFrak office, Ms. Chacon was not told about or shown any specific apartments.  (*Id.* ¶ 34.)  Eventually, Ms. Chacon was informed by mail that her application had been cancelled (not denied) by Defendants.  (*Id.* ¶ 38.)

Rental opportunities were similarly made unavailable to the FHJC testers who contacted Defendants on behalf of a "brother" living with AIDS.  When a tester went to the LeFrak City rental office, she was told that although Defendants had apartments available to rent at LeFrak City, she could not see any of them and had to go to the Defendants' office "that takes the programs."  (*Id*. ¶ 47.)  When a tester called that office and inquired about apartments at LeFrak City, Defendants' agent refused to provide any information about whether an apartment was available to rent at LeFrak City.  (*Id*. ¶ 49.)  Defendants' agent told the tester that her brother

would first have to complete an application form, have criminal and credit background checks completed, and then be placed on a waiting list before any information about apartments would be provided.  (*Id.* ¶ 50.)  An FHJC tester who subsequently visited Defendants' rental office "that takes the programs" was told that Defendants' agent would not show the tester's brother an apartment or accept a rental application without first receiving a letter from HASA confirming the amount of the brother's rental subsidy.  (*Id.* ¶ 53.)  As with Ms. Chacon, Defendants prevented the testers from ever making an offer to rent, and thus made housing unavailable to them.

The question then becomes whether there are sufficient facts alleged in the Complaint to infer that it is plausible that Defendants intentionally made housing unavailable to Ms. Chacon and the FHJC testers because of disability.  As discussed *supra*, the answer to this is "yes."  By creating a rental process that requires documentation at the initial inquiry stage that Defendants know all HASA clients are unable to provide and Section 8 voucher holders are able to provide, Defendants have knowingly and intentionally created an unequal rental process that makes housing unavailable to disabled persons living with AIDS in violation of Section 3604(f)(1) of the Fair Housing Act.

    **C.**    **Plaintiffs' Complaint Contains Ample Facts Alleging Defendants Limited the Information They Provided to Plaintiffs about Suitably Priced Apartments Available for Inspection or Rent in Violation of Section 3604(d).**

To state a claim of discrimination under § 3604(d) of the Fair Housing Act, a plaintiff must allege that the defendant represented because of disability that any dwelling was not available for inspection or rental when such dwelling was in fact so available.  42 U.S.C. § 3604(d); 24 C.F.R. § 100.80(a); (*See* Complaint, Plaintiffs' First Claim for Relief.)  One way in which a defendant may violate this provision is by "limiting information, by word or conduct,

regarding suitably priced dwellings available for inspection, sale or rental . . . ."  24 C.F.R. § 100.80(b)(4).  The Supreme Court has held that Section 3604(d) establishes an enforceable right that applies to actual home seekers, as well as testers and fair housing organizations.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *see also Cabrera v. Fischler*, 814 F. Supp. 269, 276-77 (E.D.N.Y. 1993), *aff'd in pertinent part sub nom*, *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994).

In the instant case, Plaintiffs have alleged that Defendants limited the information they gave to Ms. Chacon and FHJC testers regarding apartments available for rent at about $1,100 at LeFrak City and other LeFrak buildings.  At the LeFrak City rental office, Defendants' agents limited information about $1,100 apartments available for inspection or rental by refusing to tell Ms. Chacon and an FHJC tester about any specific apartments after they learned Plaintiffs (or a "family member") were living with AIDS and/or were a HASA client.  (Complaint ¶¶ 32, 47.) Defendants' agents at the office that "takes the programs" also limited the information they provided to Ms. Chacon and FHJC testers about housing opportunities, especially those at LeFrak City.  (*Id.* ¶¶ 33-37, 49-50, 53.)

Despite repeated requests, Defendants refused to tell Plaintiff Chacon and FHJC's testers whether apartments renting for about $1,100 per month were available for inspection or rental even though such apartments were listed on Defendants' LeFrak City website.  Defendants limited information they provided to Ms. Chacon and FHJC's testers, not as an isolated incidence, but as part of Defendants' overall rental process, which by design completely excludes disabled people living with AIDS who are HASA clients (nearly one-half of all people living with AIDS in New York City) from access to the very information they need in order to

rent an apartment.  Defendants' motion to dismiss should be denied and Plaintiffs should be allowed to proceed with discovery regarding Defendants' intentionally discriminatory scheme.

III.    **PLAINTIFFS' COMPLAINT STATES A CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE FAIR HOUSING ACT BASED ON A DISPARATE IMPACT THEORY OF LIABILITY.**

To adequately plead a claim of housing discrimination based on disparate impact in the Second Circuit, a plaintiff must identify a facially neutral practice or policy that is alleged to have had a significantly adverse <u>or</u> disproportionate impact on a protected class of persons. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middleton*, 294 F. 3d 35, 52-53 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002) (citations and internal quotations omitted). This standard may be met by alleging facts from which the court may infer that a defendant's practice or policy has a "significantly adverse" impact on a protected class of persons – "qualitative" disparate impact. *Tsombanidis v. West Haven Fire Department*, 352 F. 3d 565, 575-78 (2d Cir. 2003).  In the alternative, a plaintiff may plead a "quantitative" form of disparate impact, i.e. alleging that a defendant's policy has a "disproportionate impact" on a protected class of persons when compared to a non-protected class.   *Id*.  Discriminatory intent need not be alleged.  *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 935 (2d Cir. 1988).  While statistical evidence is usually necessary to ultimately prove a disparate impact claim, it is "inappropriate to require a plaintiff to produce statistics [at the motion to dismiss stage] because the plaintiff has not had the benefit of discovery."  *Jenkins v. New York City Transit Authority*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) (citing *Swierkiewicz*, 534 U.S. at 511-512).

In this case, Plaintiffs have identified two specific policies that Defendants apply to persons using rental subsidies: 1) requiring written verification of the amount the government program will pay for rent <u>prior</u> to informing prospective tenants about or showing apartments to

them, and 2) refusing to consider a rental application without such written verification at the time

a rental application is initially completed.  (Complaint ¶ 61.)  Defendants repeatedly attempt to

rewrite Plaintiffs' Complaint by claiming that the policy at issue is a requirement that all

prospective applicants document their ability to pay rent (D. Mem. at 5), and even go so far as to

erroneously suggest that Plaintiffs must demonstrate that all members of the protected class are

disparately impacted by the policy.  (*Id*. at 23-24.)  Such a standard, whether at the pleading or

evidentiary stage, conflicts with the Second Circuit's requirement that a significant number of

members of a class, not all of them, be adversely impacted in order to prove illegal

discrimination based on disparate impact.  *Huntington,* 844 F.2d at 937-938.  The allegation that

one or two of Defendants' thousands of tenants may be living with AIDS is simply irrelevant –

and is an alleged fact yet to be adduced.

As the Complaint explains, one-half of New York City residents living with AIDS are

HASA clients, and the vast majority of HASA clients, all of whom are disabled and living with

clinical/symptomatic HIV illness or AIDS, utilize a HASA housing subsidy to rent their

apartments.  (Complaint ¶¶ 21, 23-25.)  When disabled persons living with AIDS attempt to rent

an apartment using a HASA housing subsidy, they must first identify the specific apartment

available for rent before HASA will approve rental payments.  (*Id*. ¶ 22.)   As alleged in the

Complaint, Defendants' policies prevent all HASA clients and thus, nearly one-half of New

Yorkers living with AIDS, from ever renting one of Defendants' apartments – not because

HASA clients cannot provide any verification that they have the ability to pay rent, but because

they cannot provide this information at the initial stage of the rental process.  (*Id*. ¶¶ 21-25.)

Based on these facts, and the experiences of Ms. Chacon and the FHJC testers described in

Paragraphs 34 through 54 of the Complaint, Plaintiffs allege that Defendants' policies have a

significantly adverse impact (a qualitative disparate impact) based on disability because these policies prevent nearly one-half of all New Yorkers living with AIDS from renting one of Defendants' apartments.

Plaintiffs also allege that Defendants' policies have a disproportionate impact on people living with AIDS in comparison to other groups of prospective tenants (a quantitative disparate impact). Specifically, Plaintiffs allege that even though Defendants' policies are applied equally to both Section 8 voucher holders and HASA clients, only 16% of Section 8 voucher holders are disabled households compared to 100% of HASA clients. (Complaint ¶ 26.)[3] To underscore the disproportionate impact that Defendants' policies have on people living with AIDS, Plaintiffs' further allege that only 10% of all New York City residents were disabled as of 2011. (*Id.*) It is reasonable to infer that most of New York City's disabled residents do not have disabilities related to AIDS, and thus, the vast majority of New Yorkers are not adversely affected by Defendants' policies because of disability - only people living with AIDS are disproportionately burdened by them.

It is reasonable to infer from the facts alleged in Plaintiffs' Complaint that discovery will show that persons living with AIDS are substantially more likely than the non-disabled, as well as persons with other disabilities who by definition are ineligible for HASA benefits, to rely upon HASA housing subsidies rather than Section 8 vouchers, employment, or other sources of payment for rent. Discovery also will show that HASA indeed provides landlords with documentation verifying proof of rental payments, but not in the form of an initial letter. The fact that Defendants have adopted policies making it impossible for nearly one-half of people

---

[3] While Defendants attempt to claim they apply the same rental criteria to all prospective applicants, including those who are employed and do not use rental subsidies, FHJC's testing revealed that employed renters are not required to provide written proof of their ability to pay rent at the initial phase of the rental process. (Complaint ¶¶ 42-45.) Instead, they are told about and shown specific apartments available to rent and are not placed on a mandatory waiting list. (*Id.*)

living with AIDS in New York City to ever rent an apartment from them underscores that their

policies "actually or predictably" have a discriminatory effect based on disability.  *See*

*Huntington*, 844 F.2d at 934. The facts alleged by Plaintiffs are sufficient at the pleadings stage

to infer that Plaintiffs have stated a plausible claim of disability discrimination based on

disparate impact under the Fair Housing Act and that they have provided Defendants fair notice

of the basis for liability.

**IV.     UNDER THE RESTORATION ACT OF 2005, THE CITY HUMAN RIGHTS
         LAW EXPRESSLY REQUIRES AN INDEPENDENT ANALYSIS AND LIBERAL
         CONSTRUCTION IN ALL CIRCUMSTANCES, EVEN WHERE STATE AND
         FEDERAL HUMAN RIGHTS LAWS HAVE COMPARABLE LANGUAGE.**

In interpreting Plaintiffs' claims under the City Human Rights Law, the Court must be

guided by important and relevant amendments made in 2005.  In that year, in the face of what it

perceived as a judicial erosion of civil and human rights protections, the New York City Council

("City Council") passed the Restoration Act,[4] explicitly amending the City Human Rights Law to

require an independent construction of that law and indeed the most liberal interpretation

available:

> The provisions of this title shall be construed liberally for the accomplishment of
> the uniquely broad and remedial purposes thereof, regardless of whether federal
> or New York State civil and human rights laws, including those laws with
> provisions comparably-worded to provisions of this title, have been so construed.

N.Y. City *Admin. Code § 8-130.*

As the New York Court of Appeals has explained, in interpreting the City Human Rights

Law, "we must be guided by the [Restoration Act], enacted by the City Council to clarify the

scope of New York City's Human Rights Law, which, the Council found has been construed too

narrowly to ensure protection of the civil rights of all persons covered by the law."  *Albunio v.*

---

[4] Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, at § 1 (2005) ("It is the sense of
the Council that New York City's Human Rights Law has been construed too narrowly to ensure
protection of the civil rights of all persons covered by the law.").

*City of New York*, 16 N.Y.3d 472, 477 (2011) *(citation and internal quotations omitted).  Accord id. at 477-78* ("We must construe [this section], like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.")*; Bumpus v. New York City Transit Auth.*, 18 Misc. 3d 1131A, 859 N.Y.S.2d 893 (Sup. Ct., Kings County 2008), *aff'd* 66 A.D.3d 26, 883 N.Y.S.2d 99 (2d Dep't 2009) ("The New York City Human Rights Law sets forth a broad purpose.  The legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation.") (citations omitted); *Jordan v. Bates Advertising Holdings, Inc.*, 11 Misc. 3d 764, 770, 816 N.Y.S.2d 310, 317 (Sup. Ct., N.Y. County 2006) ("The Administrative Code's legislative history clearly contemplates that the New York City Human Rights Law be liberally and independently construed with the aim of making it the most progressive in the nation.").

Of equal importance, the City Human Rights Law must be construed independently, and even more liberally than federal statutes such as the Fair Housing Act:

> [T]he City HRL now explicitly requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language.  The independent analysis must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's "uniquely broad and remedial" purposes, which go beyond those of counterpart State or federal civil rights laws.

*Williams v. New York City Housing Auth.*, 61 A.D.3d 62, 66, 872 N.Y.S.2d 27, 31 (1st Dep't 2009).  *Accord Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 996, 929 N.Y.S.2d 259, 261 ("2d Dep't 2011); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

Accordingly, the City Council expressly provided that "similarly worded provisions of federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise."  Local Civil Rights Restoration

Act of 2005, N.Y.C. Local Law No. 85 (2005).  *Accord Nelson*, 87 A.D.3d at 996, 929 N.Y.S.2d

at 261.  *See Vig v. New York Hairspray Co.*, 885 N.Y.S.2d 74, 78 n.6 (1ˢᵗ Dep't 2009); *Loeffler*,

582 F.3d at 278.

> The Second Circuit has recently echoed these admonitions:
>
> Pursuant to these revisions, courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.  Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards.

*Mihalik v. Credit Agricole Cheuvreux North America*, 715 F.3d 102, 109 (2d Cir. 2013)

(citations and internal quotations omitted).

## V.   DEFENDANTS ERRONEOUSLY URGE THIS COURT TO INTERPRET THE CITY HUMAN RIGHTS LAW CLAIMS IDENTICALLY WITH THE FAIR HOUSING ACT CLAIMS.

As Plaintiffs demonstrated in Section I, *supra*, under the Restoration Act, "courts must

analyze NYCHRL claims separately and independently from any federal and state law claims,

construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent

that such a construction is reasonably possible."  *Mihalik*, 715 F.3d at 109 (citations and internal

quotations omitted).  Defendants nonetheless erroneously assert that the City Human Rights Law

"requires the same elements as a claim under the FHA."  (D. Mem. at 12.)  Not only does this

directly violate the Restoration Act's requirement of an independent analysis of the City Human

Rights Act claims, but the cases that Defendants cite establish nothing of the kind.

In *Sanders v. Grenadier Realty, Inc.*, 08 Civ. 3920, 2009 U.S. Dist. LEXIS 38356

(S.D.N.Y. May 6, 2009), after dismissing the federal claims, the court declined to exercise

supplemental jurisdiction over plaintiffs' state law claims, providing no analysis of the

requirements of the state claims, much less any city claims.  *See id.* at *9.  In *Passanante v. R.Y.*

*Mgmt. Co., Inc.*, 99 Civ. 9760, 2001 U.S. Dist. LEXIS 1205 (S.D.N.Y. Feb. 13, 2001), this Court granted defendants' <u>summary judgment</u> motion, and nowhere set forth the elements required to plead a claim under the City Human Rights Law, much less providing an independent analysis of such a claim (over which the Court declined to exercise supplemental jurisdiction).  Finally, *Haber v. ASN 50th Street LLC*, 847 F. Supp. 2d 578 (S.D.N.Y. 2012), is also a summary judgment decision, and likewise fails to set forth the elements required to plead a claim under the City Human Rights Law, much less to provide an independent analysis of such a claim.[5]

Respectfully, the Restoration Act requires that this Court independently assess Plaintiffs' claims under the City Human Rights Law, based upon the plain language of that law, rather than under standards developed with respect to the FHA.  (Plaintiffs note, however, that they amply meet the requirements of the FHA as well.  (*See* Sections II and III, *supra*.)

## VI.  PLAINTIFFS HAVE AMPLY STATED CLAIMS FOR INTENTIONAL SOURCE OF INCOME DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW, ON MULTIPLE GROUNDS.

Even without the broadest and most liberal construction in Plaintiffs' favor, which the Restoration Act requires, Plaintiffs' claims are more than adequately pleaded.  Indeed, the Complaint properly alleges "source of income discrimination" under the City law on multiple grounds, many of which constitute textbook discrimination, from segregated systems of brokerage to blatantly disparate treatment of those relying upon a HASA subsidy.  Defendants dispute Plaintiffs' allegations largely by seeking to adduce facts outside of the four corners of

---

[5]  The court's statement that "NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA," (*id.* at 588), does not alter this conclusion:  <u>first</u>, this statement is incorrect, since the Restoration Act expressly requires an independent analysis, as the Second Circuit has repeatedly affirmed; <u>second</u>, the standard in question is the standard on summary judgment, not upon a motion to dismiss; and <u>third</u>, the court did not set forth that standard, having concluded that Plaintiffs dispositively failed "to show that defendants' action against him arose from a discriminatory motive."  *Id.* at 586.

Plaintiffs' Complaint.  As more fully discussed below, Defendants' arguments are improper, and unavailing.

The following briefly summarizes the multiple grounds upon which Plaintiffs have stated a claim for source of income discrimination.  Each of these constitutes an independent ground upon which to base a claim, making dismissal improper.

### A.    Defendants Have Refused to Assist Those with a Government Subsidy.

Defendants' refusal to conduct business with individuals who have a government housing subsidy at the LeFrak City rental office, located at 59-27 Junction Boulevard ("LeFrak City Office"), constitutes intentional discrimination based upon source of income.  (Complaint ¶ 57.) The Complaint alleges that Defendants operate a segregated and discriminatory system for the rental of properties.  The LeFrak City Office refused to assist Ms. Chacon in any way, sending her to a different office, Kings and Queens Leasing ("Kings and Queens"), despite the fact that the LeFrak City website indicated that there were apartments available in Ms. Chacon's price range.  (*Id*. ¶ 32.)

The FHJC tests confirmed this discriminatory scheme.  On May 1, 2012, an ostensibly employed tester called Kings and Queens, whereupon Defendants' employee/agent sent her to Defendants' LeFrak City Office.  There, Defendants' employees/agents assisted the employed tester in searching for apartments at LeFrak City in the $1,100 per month range.  (*Id*. ¶¶ 42-45.) This was the same office – the LeFrak City Office – that refused to assist Ms. Chacon and instead sent her to Kings and Queens, because she had a government subsidy.

A week later, on May 8, 2012, an FHJC tester seeking an apartment in the same price range for a brother with a HASA subsidy (the "HASA subsidy tester") called Defendants' LeFrak City Office.  In stark contrast to their treatment of the ostensibly employed tester, and

consonant with the manner in which Defendants treated Ms. Chacon, Defendants refused to assist the HASA subsidy tester in renting apartments and instead told her to call Kings and Queens, the office of Defendants "that takes the programs." (*Id.* ¶¶ 46-47.)

These facts, if true – and of course for the purposes of a motion to dismiss, they must be taken as true – constitute intentional discrimination and illegal segregation of services based on source of income.  Defendants cannot refuse to "take programs" at any of their offices, or to segregate those with a government subsidy to an office "that takes the programs." (*Id.* ¶¶ 46-47, 54-55.)  The Complaint plainly alleges that Defendants have violated section 8-107(5)(a)(1) of the City Human Rights Law, which provides that Defendants cannot "refuse to . . . rent . . . or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein because of . . . any lawful source of income of such person or persons . . . ." N.Y. City Admin. Code § 8-107(5)(a)(1).  The Complaint also plainly states a claim under subsection (2) of section 8-107(5)(a), which provides that Defendants cannot "discriminate against any person because of . . . any lawful source of income of such person . . . ." N.Y. City Admin. Code § 8-107(5)(a)(2).[6]

Defendants seek to dismiss this claim by relying upon alleged facts not contained in the Complaint, alleged facts that they will doubtless attempt to adduce during discovery.  Specifically, Defendants allege that they employ a segregated office for those on programs – Kings and Queens – "to permit it to navigate the complex web of procedures relating to the administration of housing-subsidy programs" (D. Mem. at 1), and that employees in the LeFrak City Office "lack the particular knowledge of the LeFrak personnel who focus on working with subsidized tenants and applicants." (*Id.* at 5.)  None of those alleged facts is contained in the

---

[6] Defendants focus only on subsection (1), but Plaintiffs expressly alleged violation of section 8-107(5)(a) of the City Human Rights Law, which naturally includes subsection (2). (*See* Complaint ¶¶ 96-98, and Prayer for Relief, sections (a) and (b), at 25-26.)

four corners of the Complaint.  It is settled that this Court cannot consider those allegations in

deciding this motion to dismiss.  As the Second Circuit has explained:

> [A] district court errs when it considers affidavits and exhibits submitted by
> defendants, or relies on factual allegations contained in legal briefs or memoranda
> in ruling on a 12(b)(6) motion to dismiss.  Vacatur is required even where the
> court's ruling simply makes a connection not established by the complaint alone
> or contains an unexplained reference that raises the possibility that it improperly
> relied on matters outside the pleading in granting the defendant's Rule 12(b)
> motion.

*Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (citations and internal quotations

omitted).  *Accord Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24,

25 (2d Cir. 1988) ( "Factual allegations contained in legal briefs or memoranda are also treated

as matters outside the pleading for purposes of Rule 12(b).") (citation omitted).[7]  It is therefore

unnecessary at this juncture to decide the question whether it is ever legally permissible to

---

[7] Defendants similarly rely upon a LeFrak application (the "Physical Document") that Plaintiffs did not quote from or append to the Complaint, citing cases that stand for the proposition that a court may consider documents where they are "incorporated by reference" in the Complaint, or where plaintiffs relied upon those documents in bringing suit, or where the complaint "relies heavily upon a document's terms and effects."  (D. Mem. at 5 n.2; citations and internal quotations omitted).  Plaintiffs did not incorporate the Physical Document by reference or otherwise; plaintiffs did not rely upon any such document in bringing suit – indeed, Plaintiffs did not even view such a document when drafting the Complaint; and Plaintiffs thus did not rely – much less "heavily" – upon any such document's terms and effects.  The Complaint naturally mentions that Ms. Chacon applied for an apartment with Defendants, but it does not remotely incorporate or quote from any Physical Document.  (*See, e.g.*, Complaint ¶ 32: "Ms. Jones stated that she needed the [HASA letter] and that Ms. Chacon's application would be terminated without it."; *id.* ¶ 38 ". . . advising her that her application had been cancelled . . . .").  As the Second Circuit explained in *Chambers v. Time Warner, Inc.*:  "Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's <u>reliance on the terms and effect of a document</u> in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  282 F. 3d 147, 150 (2d Cir. 2002) (citation omitted; emphasis added).  That reliance, moreover, must "render[] the document 'integral' to the complaint."  *Id.* at 153 (citation omitted).  The Second Circuit has clarified, moreover, that even limited quotation of a document does not constitute incorporation by reference; here, Plaintiffs did not quote from or allude to the Physical Document <u>at all</u>.  *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) ("Here, the 1985 Annual Report and the 1985 10K were not attached as exhibits to the amended complaint nor were they incorporated by reference.  The amended complaint merely discussed these documents and presented short quotations from them.  Limited quotation does not constitute incorporation by reference.") (citation and internal quotations omitted).  It would thus be improper to consider the Physical Document in deciding this motion to dismiss.

segregate applicants into an office designated for those in a protected category, such as those on government programs, and to refuse to assist those individuals at Defendants' other offices.

**B.      Defendants Discriminate in the Manner in Which They Meet with Applicants.**

Plaintiffs have stated a claim for discrimination based upon the disparate, discriminatory manner in which Defendants meet with applicants.  As set forth in Section VI.A., *supra*, the Complaint alleges that Defendants send applicants with a government subsidy to a segregated office, Kings and Queens.  There, they communicate with applicants on programs "through a glass window while standing," with a slot at the bottom to make payments.  (Complaint ¶¶ 3, 52, 55.)  In sharp contrast, Defendants meet with employed applicants "while seated face-to-face at tables in conference rooms," and "without a security glass window."  (*Id.* ¶¶ 3, 44, 55.)  This disparate, discriminatory treatment clearly violates section 8-107(5)(a), which provides that Defendants cannot "discriminate against any person because of . . . any lawful source of income of such person . . . ."  N.Y. City Admin. Code § 8-107(5)(a)(2).

**C.      Defendants Intentionally Discriminate in the Application Process.**

The Complaint alleges blatant, discriminatory, disparate treatment of individuals with a government housing subsidy in the application process.  Defendants will not tell prospective renters with housing subsidies about any apartments, or show them any apartments, until they have completed an application and a credit check.  (Complaint ¶¶ 3, 32-34, 37-38, 47, 49, 50-53, 58.)  In stark contrast, Defendants provide employed prospective renters with applications, inform them of available apartments, and show them available apartments before they have submitted proof of income or other documentation, and before they have passed a credit check. (*Id.* ¶¶ 44, 45, 58.)  This disparate, discriminatory treatment clearly violates section 8-107(5)(a), subsections (1) and (2).

Remarkably, Defendants argue that the blatantly discriminatory act of refusing to show apartments to applicants with a government subsidy until after they have completed an application and a credit check, while showing those apartments to employed applicants before these steps are completed, "is not actionable under NYCHRL § 8-107(5)(a)."  (D. Mem. at 18.) Defendants are wrong.

First, Defendants again completely ignore section 8-107(5)(a)(2).  Refusing to show applicants with subsidies any apartments until after completion of an application and credit check constitutes a blatant violation of this provision of "NYCHRL § 8-107(5)(a)."  (D. Mem. at 18.)  An analogy makes this clear:  Defendants cannot argue that they are permitted to insist that African American applicants complete an application and credit check before informing them about or showing them any apartments, while imposing no such requirement upon White applicants.  There is no principled distinction in the law between "race" and source of income: this practice is illegal when imposed upon any protected class under the City Human Rights Law.

Second, Defendants argue that the law "does *not* expressly forbid conduct such as refusing to make housing available for inspection . . . ."  (D. Mem. at 18.)  As Defendants' acknowledge, however, section 8-107(5)(a)(1) provides that it is illegal not only to refuse to rent to those with a governmental subsidy, but also to "otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein because of . . . any lawful source of income of such person or persons . . . ."  N.Y. City Admin. Code § 8-107(5)(a)(1).  (*See* D. Mem. at 18.)  Defendants' actions plainly violate this provision, even without applying the uniquely broad and favorable construction required by the Restoration Act. (*See* Section I, *supra*.)

Nonetheless, Defendants argue that the City Council could not have intended to prohibit the discrimination in question – refusing to discuss or show available apartments to those on a governmental subsidy – by employing a specious, "apples and oranges" argument.  Specifically, Defendants point to an inapposite section of the City Human Rights Law – section 8-107(5)(c) – which prohibits certain <u>representations</u>, making it illegal to "<u>represent</u> that any housing accommodation . . . is not available for inspection, sale, rental or lease when in fact it is so available . . . ."  N.Y. City Admin. Code § 8-107(5)(c)(1) (emphasis added).  Defendants argue that this language covers the conduct of which Plaintiffs complain, and its omission from section 8-107(5)(a) suggests that the City Council never intended to prohibit this discrimination under that section.  (D. Mem. at 18-20.)  The problem with Defendants' argument is that they are comparing apples and oranges:  the language that they cite from section 8-107(5)(c) does not cover the conduct of which Plaintiffs complain:  that language prohibits certain <u>representations</u>, essentially <u>lying</u> about apartments, stating that specific apartments are "not available" when in fact they are.  *See* N.Y. City Admin. Code § 8-107(5)(c).  Plaintiffs complain about Defendants' failure to tell Plaintiffs about and to actually show available apartments until after they have completed an application and credit check.

### D.     Defendants Discriminate by Placing Those with a Government Housing Subsidy on a Waiting List.

The Complaint alleges that Defendants blatantly discriminate against applicants with a governmental source of income such as HASA by placing them on a waiting list for apartments prior to telling them about or showing them available apartments, a policy not imposed upon employed prospective tenants.  (Complaint ¶¶ 44, 50, 59.)  Indeed, Defendants showed an ostensibly employed FHJC tester an actual, available apartment that would be "ready in a few days."  (*Id.*  ¶¶ 44.)  In stark contrast, Defendants refused to discuss, much less offer to show, an

available apartment for a HASA client, and stated that the applicant with a HASA housing subsidy would be put on a waiting list for an apartment.  (*Id.* ¶ 50.)  This intentional, disparate, discriminatory treatment clearly violates section 8-107(5)(a), subsections (1) and (2).

**E.      Defendants Discriminate by Demanding a Letter That They Know HASA Does Not Provide, Preventing All HASA Clients from Securing One of Defendants' Apartments.**

The Complaint alleges that Defendants have intentionally adopted a policy that categorically prevents all HASA clients from securing Defendants' apartments.  (*Id.* ¶ 60.) Specifically, Defendants require that applicants with a governmental subsidy, including HASA clients, provide Defendants with a letter setting forth a sum certain in rental assistance before they will assist such applicants in securing an apartment with Defendants.  (*Id.* ¶¶ 33, 34, 37, 38, 50, 51, 53, 60.)  HASA does not provide such a letter, and Defendants are well aware of this fact. (*Id.* ¶¶ 19, 51, 53, 60.)[8]  Indeed, Ms. Chacon, her Housing Works case manager, HASA employees, and the FHJC testers repeatedly informed Defendants of this fact (*id.* ¶¶ 34-37, 53, 60), and Defendants repeatedly acknowledged their awareness of this fact.  (*Id.* ¶¶ 51, 53.)

The intentional adoption of a policy to exclude individuals with a HASA subsidy plainly violates section 8-107(5)(a), subsections (1) and (2). (Given that Defendants' policy also categorically excludes all HASA clients, it also presents a classic case of disparate impact discrimination, but the Court need not reach that issue at this juncture.)

---

[8]  Defendants erroneously contend that "other HASA clients" have obtained "documentation of their HASA housing subsidies," relying for this proposition upon *Kennedy v. Related Mgmt.*, 08 Civ. 3969, 2009 U.S. Dist. LEXIS 64732 (S.D.N.Y. July 23, 2009).  This contention betrays an ignorance of public assistance: nowhere in *Kennedy* does the court suggest that a HASA client obtained documentation of his housing subsidy.  The decision merely alludes to the client's overall "public assistance," his overall "welfare" budget, something very different from a prospective housing subsidy letter.  *Id.* at *7.  The plaintiff in *Kennedy* did not – and could not – provide the defendant with a letter setting forth the amount that HASA/HRA would pay toward rent, and, ironically, the plaintiff in fact argued that his "HRA award would cease once [defendant] granted the apartment."  *Id.* at *14 (emphasis added).

**1. Courts have consistently rejected Defendants' administrative burden defense, particularly under the precise circumstances at bar.**

Defendants offer an administrative burden defense:  HASA's forcing Defendants to wait the statutorily-prescribed period for confirmation of approval, rather than providing a letter setting forth the housing subsidy up front, constitutes an administrative burden that relieves Defendants of the obligation to serve any of its more than 40,000 clients and dependents.  It is HASA "whose policy is the real source of any alleged injury" (D. Mem. at 4), injury caused by the "failings of a City agency that Plaintiffs chose not to sue."  (*Id.* at 2.)  Unfortunately for Defendants, as discussed *infra*, courts have consistently rejected this argument, an argument that is particularly unavailing here:  the very legislative body that codified the existence of HASA, and mandated the waiting period in question, later passed the source of income law with no exemption for the HASA program, despite full knowledge of the administrative "burdens" in question.

As the Complaint alleges, HASA does not provide a letter setting forth the amount of a client's rental subsidy.  (Complaint ¶¶ 20, 21, 60.)  Instead, "[o]nce an apartment is located by a HASA client and approved by HASA, within the legally mandated time frame, the owner of the apartment is provided written documentation from HASA in the form of a direct-vendor check for the first month's rent and a voucher for a security deposit . . . ."  (*Id.* ¶ 18.)  Thereafter, "HASA continues to provide the owner of the apartment direct-vendor checks each month to pay the client's full rent."  (*Id.*)

Thus, HASA indeed "provides written documentation verifying it will pay rent to landlords for HASA clients."  (*Id.* ¶ 22.)  Defendants nonetheless object to the burden imposed

by HASA's bureaucratic delay,[9] complaining that proof of ability to pay is "tendered only *after* HASA approves the apartment for rental and a lease is executed."  (D. Mem. at 14.)  Defendants' argument is reminiscent of a legislative hearing conducted to determine *whether* to pass a source of income discrimination law, and if so, whether to do so without carving out an exception for the bureaucratic delays inherent in governmental assistance programs.  <u>The New York City Council ("City Council") conducted those hearings and passed the source of income law in 2008, with no such exceptions</u>.  If Defendants do not like that law, they should lobby the legislative branch for an exception based upon bureaucratic delay.  They cannot, however, ask this Court to nullify the source of income law.[10]  Indeed, Defendants' argument categorically renders the source of income law meaningless for more than 40,000 HASA clients and their dependents.

This defense is particularly untenable here, moreover, where <u>it is based upon a bureaucratic process that the City Council itself established just years before passing the source of income law</u>.  Defendants complain that delay in processing clients' requests for housing assistance constitutes a legitimate justification for refusing to comply with the source of income

---

[9]  By law enacted by the City Council, HASA must approve a client's application for a housing subsidy within 20 business days.  *See infra* p. 28.

[10]  Creating an exemption based upon bureaucratic delay or burden would, in fact, render the source of income law meaningless and defeat the Legislature's intent, for all governmental subsidies involve some sort of delay or administrative burden.  *See Feemster v. BSA Ltd. Partnership*, 548 F.3d 1063, 1070-71 (D.C. Cir. 2008) ("Permitting BSA to refuse to accept Section 8 vouchers on the ground that it does not wish to comply with Section 8's requirements would vitiate [the Human Rights Law's inclusion of Section 8 recipients] and the legal safeguard it was intended to provide."); *Friedman-Kien v. City of New York*, 92 A.D.2d 827, 828, 460 N.Y.S.2d 547, 549 (1st Dep't 1983) ("The courts will not construe statutes . . . in such a manner as to thwart the obvious legislative intent and reach absurd and unexpected consequences.") (citations omitted), *aff'd*, 61 N.Y.2d 923, 474 N.Y.S.2d 722 (1984); *Evans v. Newman*, 71 A.D.2d 240, 244, 423 N.Y.S.2d 59, 63 (3d Dep't 1979) ("A construction inconsistent with the purposes of the statutory scheme should be avoided."), *aff'd*, 49 N.Y.2d 904, 428 N.Y.S.2d 226 (1980); *State v. Cities Service Co.*, 180 A.D.2d 940, 942, 580 N.Y.S.2d 512, 514 (3d Dep't 1992) ("A court should avoid a statutory interpretation rendering the provision meaningless or defeating its apparent purpose.") (citing *Industrial Commr. v. Five Corners Tavern*, 47 N.Y.2d 639, 646-47, 419 N.Y.S.2d 931, 935 (1979)).  Unequivocally, it would nullify the source of income law for more than 40,000 HASA clients and their dependents, none of whom can produce the letter that Defendants demand.

law.  In fact, it was the City Council that created this processing period.  In 1997, the City

Council passed Local Law 49, or the "HASA Law," which provides, in relevant part:

> Where no statute, law, regulation or rule provides a time period within which a
> benefit or service shall be provided to an eligible person who requests such a
> benefit or service, such benefit or service shall be provided no later than twenty
> business days following submission of all information or documentation required
> to determine eligibility.

N.Y. City Admin. Code § 21-128(c)(3).  It is this provision that governs the processing of

applications for housing assistance from HASA clients.  *See Henrietta D. v. Guiliani*, 119 F.

Supp. 2d 181, 200 (E.D.N.Y. 2000) (discussing the 20-business-day time frame, including for

"new apartment rents").

Eleven years later, the same City Council passed Local Law 10, the "Source of Income

Law."  *See Cales and Fair Housing Justice Center, Inc. v. New Castle Hill Realty, et al.*, 10 Civ.

3426, 2011 U.S. Dist. LEXIS 9619, at *17 (S.D.N.Y. Jan. 31, 2011).  Obviously, having

established the processing period for HASA housing applications, the City Council was aware of

this period when it passed the source of income law without exceptions or exemptions.[11]

In fact, in passing Local Law 10, the City Council specifically and expressly addressed

the issue of administrative burdens, carving out an exemption on this basis only for small

landlords:  section 8-107(o) provides that the source of income law is inapplicable to housing

accommodations with five or fewer units.  *See* N.Y. City Admin. Code § 8-107(o); *Tapia v.*

*Successful Mgmt. Corp.*, 400563/08, 2009 N.Y. Misc. LEXIS 1909, at *4 n.6 (Sup. Ct., N.Y.

County July 20, 2009), *aff'd*, 79 A.D.3d 422, 915 N.Y.S.2d 19 (1st Dep't 2010) ("Section 8-

107(o) of Local Law 10 makes the prohibition against discrimination based upon source of

---

[11]  There is no basis for Defendants' assertion that HASA's policy "appear[s] to be inconsistent with the
mandates of" the HASA Law.  (D. Mem. at 7 n.3.)  The HASA Law indeed requires HASA to provide
housing subsidies and enhanced rental assistance, and HASA does so.  Defendants merely take issue with
the manner in which HASA does so – and has done so since its creation in 1985.  (Complaint ¶ 20.)

income inapplicable to buildings with five or fewer units . . . .").  This provision was "consistent

with the City Council's understanding that small landlords may have difficulty with the

administrative burden that can come with the Section 8 program,[12] and the Council's decision

therefore to exempt landlords who own five or fewer units . . . ."  *Id.* (citation and internal

quotations omitted).  Defendants' request that this Court usurp the legislative function and, by

judicial fiat, amend or nullify the source of income law – in a manner that the City Council

expressly considered and rejected – is wholly inappropriate, particularly under the circumstances

at bar.

  Not surprisingly, then, courts have consistently rejected this defense, in this very Court

and even with regard to the very same HASA program.   In *Short v. Manhattan Apartments*, 916

F. Supp. 2d 375 (S.D.N.Y. 2012), the court very recently examined, at trial, <u>the precise issue at</u>

<u>bar</u>.  In *Short*, defendants similarly argued that they had a nondiscriminatory reason for failing or

refusing to serve HASA clients, namely, the "bureaucratic delays or other administrative

burdens" associated with the HASA program, *id.* at 398, including the fact that, unlike HASA

clients, employed applicants "can move in and start paying rent immediately."  *Id.* at 397.  In a

decision directly on point, issued less than a year ago, the court firmly rejected this argument:

> The City Council was clearly aware of the bureaucratic delays associated with
> HASA and other government rental subsidies when it passed the source of income
> law in 2008, since the City Council set the general processing period for certain
> city services, including HASA lease approvals, in 1997.  Nevertheless, the City
> Council declined to carve out an exception for bureaucratic delays or other
> administrative burdens.  This omission, in conjunction with the City Council's
> declaration that the NYCHRL be construed "liberally for the accomplishment of
> [its] uniquely broad and remedial purposes," clearly favors Plaintiffs'
> interpretation.

---

[12]  Those burdens are, of course, analogous to those of the HASA program, the FIAV program, and others,
as the discussion *infra* demonstrates.  Accordingly, the City Council did not limit the exemption based
merely upon the Section 8 program, but made it applicable in all instances, vis a vis all government
programs.

*Short*, 916 F. Supp. 2d at 398.

> A year earlier, this Court dismissed the same defense on a motion to dismiss:

> [Defendant] asserts that it declines to participate in government programs, such as FIAV, for non-discriminatory reasons such as a desire to avoid the administrative burdens imposed by those programs.  However, it has been illegal since March 26, 2008 for landlords and real estate agents in New York City to discriminate in the rental or terms and conditions of housing on the basis of "lawful source of income," including "income derived from . . . any form of federal, state or local public assistance or housing voucher."  N.Y.C. Admin. Code §§ 8-107(5) and 8-102(25) ("Local Law 10").  New York courts interpreting Local Law 10 have consistently held that landlords and agents cannot avoid liability for refusing to participate in government housing programs by claiming that the terms of or burdens imposed by a voucher program are undesirable.

> If, as alleged, [Defendant] refuses to rent to individuals who propose to pay with vouchers, Local Law 10 prevents it from avoiding liability by asserting a desire to avoid requirements, as it attempts to do here.  [Defendant's] assertion of a non-discriminatory motive is therefore without merit and cannot overcome the presumption of discrimination created by Plaintiffs' prima facie showing of housing discrimination.

*Cales and Fair Housing Justice Center, Inc. v. New Castle Hill Realty, et al.*, 10 Civ. 3426, 2011

U.S. Dist. LEXIS 9619, at *16-18 (S.D.N.Y. Jan. 31, 2011) (citations omitted).  In *Cales*, the

Court examined the burdens imposed by New York City's  "FIAV" program, illustrating the

point that all bureaucracies come with some form of burden, and landlords "cannot avoid

liability for refusing to participate in government housing programs by claiming that the terms of

or burdens imposed by a voucher program are undesirable."  *Id.* at *17.

The same is true of the Section 8 program, which has its own "burdens."  Hence, in *Tapia*

*v. Successful Mgmt. Corp.*, 400563/08, 2009 N.Y. Misc. LEXIS 1909 (Sup. Ct., N.Y. County

July 20, 2009), *aff'd*, 79 A.D.3d 422, 915 N.Y.S.2d 19 (1st Dep't 2010), defendants claimed that

"if Local Law 10 were held to protect existing tenants who previously were not Section 8

recipients, then defendants would be forced to enter into HAP contracts with NYCHA that would

include more restrictive terms and conditions than those contained in the regulations to which

they are currently subject under the rent stabilization law." *Id.* at *16.  With reasoning fully applicable to the instant case, and consonant with that of the courts cited above, the court firmly rejected this defense:  "While the antidiscrimination clause of Local Law 10 may impose an additional burden on landlords of rent stabilized tenants, that burden is incidental to the prohibition of discrimination."  *Id.* at *18.  *Accord Timkovsky v. 56 Bennett LLC*, 24 Misc. 3d 997, 998 (Sup. Ct., N.Y. County 2009).

Dealing with a bureaucracy has its pros and cons.  Along with the cons are many pros, such as the guaranteed stream of direct-vendor rent checks from the government on behalf of clients like Ms. Chacon, the guarantee of increased rental payments upon a rise in rent, and the potential of governmental assistance in paying any arrears.  Indeed, landlords in New York obviously find HASA clients attractive for their lower-market rentals, since"[t]ens of thousands of HASA clients are currently renting private-market apartments throughout New York City utilizing a subsidy from HASA notwithstanding the fact that, upon information and belief, HASA never provided any of these landlords with a letter setting forth the sum certain that HASA would pay in housing subsidies for those clients."  (Complaint ¶ 21.)  Despite the bureaucratic delays, "upwards of hundreds of thousands of private-market apartments in New York City have been rented to HASA clients."  (*Id.* ¶ 20.)  As the City Council inevitably concluded, the initial application period is part of the cost of doing business with government programs.  *Tapia*, 2009 N.Y. Misc. LEXIS 1909, at *18 ("While the antidiscrimination clause of Local Law 10 may impose an additional burden on landlords of rent stabilized tenants, that burden is incidental to the prohibition of discrimination.").

### 2. Defendants' assertion that Plaintiffs were not qualified to rent is a tautology.

Finally, Defendants' assertion that Plaintiffs fail to state a claim because they were not qualified to rent is a tautology.  (D. Mem. at 16.)  Defendants argue that Plaintiffs are not qualified <u>not</u> on the grounds that Plaintiffs cannot afford the rent, etc., but because Plaintiffs cannot produce a letter earlier in the process that Defendants have impermissibly demanded, a letter that Defendants know Plaintiffs cannot produce.  (Complaint ¶ 4, 60, 61.)  This begs the question whether Defendants can intentionally impose a policy that categorically refuses to accept HASA clients based upon HASA's administrative time frame.  As discussed *supra*, it is settled that they cannot do so.  Plaintiffs were qualified to rent, in the same manner as tens of thousands of other HASA clients currently renting private-market apartments in New York City utilizing the HASA housing subsidy.  (*Id*. ¶ 21.)  If Defendants do not want to accept tenants from the HASA program, they should lobby the City Council to create an exemption, an exemption the City Council expressly chose not to adopt.

## VII. PLAINTIFFS HAVE AMPLY STATED CLAIMS FOR DISABILITY DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW.

The City Human Rights Law provides that Defendants cannot "refuse to . . . rent . . . or otherwise deny to or withhold from any person or group of persons such a housing accommodation or an interest therein because of . . . disability. . . ."  N.Y. City Admin. Code § 8-107(5)(a)(1).  The Law also provides that Defendants cannot "discriminate against any person because of . . .disability . . . ."  N.Y. City Admin. Code § 8-107(5)(a)(2).  The analysis of disability discrimination set forth with respect to the FHA, *supra*, is equally applicable to Plaintiffs' claims of disability discrimination under the City Human Rights Law, with the proviso that the City law must be interpreted even more liberally, with the federal law serving as a floor

below which the City Human Rights Law cannot fall. *See* Section IV, *supra*. For the sake of brevity, then, Plaintiffs will not rehash those arguments here, but note that Plaintiffs have alleged disability discrimination under the City Human Rights Law based upon disparate impact and disparate treatment.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that Defendants' motion to dismiss be denied. If the Court grants the motion in any part, we respectfully request permission to amend the pleadings.

Dated: New York, NY
          September 17, 2013

<div style="margin-left:40%">

EMERY CELLI BRINCKERHOFF
          & ABADY LLP


By: _____/s/_____
          DIANE L. HOUK
          75 Rockefeller Plaza, 20th Floor
          New York, NY  10019
          (212) 763-5000


HOUSING WORKS, INC.



By: _____/s/_____
          ARMEN H. MERJIAN
          320 W. 13th Street, 4th Floor
          New York, NY  10014
          (212) 645-8111, ext. 4167

*Attorneys for Plaintiffs*

</div>

34